JOHN C. BYRNES, SHERIFF OF PLATTE COUNTY, NEBRASKA,
v. JOSIAH ELEY.

FILED NOVEMBER 5, 1903. No. 13,095.

1. **Trial to Court:** REVIEW. When trial has been by the court without a jury, reversible error can not be predicated on the admission of evidence, in the absence of an adequate showing by bill of exceptions that improper evidence was actually considered by the court as the basis of its findings, nor upon an exercise of the court's discretion in allowing proper evidence in the case to be brought out on the redirect examination of a witness.

2. **Evidence.** Evidence examined, and *held* sufficient to sustain the findings of the trial court.

ERROR to the district court for Platte county: JAMES A. GRIMISON, JUDGE. *Affirmed.*

*James G. Reeder, Ralph W. Hobart* and *Frank Dolezal,* for plaintiff in error.

*Patrick E. McKillip* and *William A. McAllister, contra.*

GLANVILLE, C.

This is a proceeding in error seeking to reverse a judgment of the district court for Platte county in an ordinary replevin action tried to the court without a jury. The plaintiff in error was sheriff of that county and was defendant in the replevin action, being in possession of the goods in question under an attachment levy in an action against J. C. Eley, wherein the Fremont Saddlery Company was plaintiff. J. C. Eley is a son of the defendant in error; and the saddlery company is supporting the contention of plaintiff in error.

Error of law occurring at the trial was assigned in the motion for a new trial; and, in the petition in error filed herein, specific complaint is made of the rulings of the court admitting certain evidence. We have carefully examined all of these assignments and are satisfied that no error is shown in this respect in the record, the trial being to the court. Some of the complaints are based upon objections to evidence as not being proper upon redirect examination of the witnesses. This matter was within the discretion of the court, and such discretion was not abused in the present instance; and, without recounting the specific assignments of error in this regard, we hold that no such error is shown in the record.

The other contentions, though assigned in different forms, merely constitute complaints that the evidence does not sustain the findings and judgment of the court. The findings of the court in such a case are entitled to the same consideration as the verdict of a jury and, unless clearly wrong, under the established rule of this court they will not be disturbed. The saddlery company was a creditor of J. C. Eley, above mentioned, and brought an action in attachment against him, alleging in the affidavit all of the statutory grounds for attachment except non-residence, and, prior to the trial in this action, it recovered judgment in the attachment case. Very soon after the levy of the attachment, the defendant in error brought a replevin action for the property in question, claiming ownership.

It appears from the testimony of the defendant in error and his witnesses, that he had signed notes with his son to enable him to start in the harness business and had paid the notes; that his son, who was a single man, boarded with him; that after a fire causing loss to the son, insurance was collected and some of the insurance money was used by the father in rebuilding the shop, under an agreement that the sum so used should be applied upon the rent agreed upon at $10 a month; that at another time the son informed the father that he needed money to pay for a

shipment of goods, and the father signed a note with him to procure the money, and afterwards paid the note.

On the 27th day of August, 1901, in pursuance to some previous negotiations, the entire stock of the son's harness business was turned over to the father, who hired a new man to take charge of the shop, and continued the business until the attachment was levied. The son immediately left home, but promised to return in a few days, and in the meantime to make and record a proper bill of sale for the stock when he was in Columbus. The father understood the son was going on the road as a salesman. It would seem from the testimony of the defendant in error, emphatic and reiterated, that at the time of the transaction in question, he did not know his son was indebted to any party other than himself. The son had learned the trade during his minority and had started in business without capital, to speak of, but had continually assured his father that he was not running in debt for stock, though in the meantime he was not ready to pay his board, nor his rent except to the extent of the payment advanced out of his insurance money. We do not think the evidence in the record so discredits the testimony of the defendant in error as to require us to hold that it will not support the findings; and it would seem from the entire evidence that the son was actually indebted to the father, at the time he went away, in excess of the value of the stock, fixtures and book accounts turned over in payment.

The value placed upon the stock in the transaction between the father and son is very close to the value placed thereon by the appraisers in the attachment action which was offered in evidence by the plaintiff in error, and the experienced salesman of the saddlery company assisted the appraisers in arriving at the value of the property. There is sharp conflict in the evidence in regard to some conversations between defendant in error and certain representatives of the saddlery company, but we do not think such conflict of evidence has any material bearing

upon the question in issue. Where a son turns over to his father all of his visible property in payment or settlement of a claim of the father against the son, the transaction will be scrutinized closely, and in a contest between the father and the creditors of the son, the burden is upon the father to clearly show the good faith of the transaction; but such a transaction may be free from fraud; and a creditor who attacks the transaction as fraudulent is not entitled to have it declared fraudulent *per se,* but must by sufficient evidence, aided by the presumptions justly arising from the relationship of the parties and the circumstances of the transaction tending to establish fraud, rebut the evidence of good faith in order to prevail against the father's title. We think there is much in the evidence lending plausibility to the father's statement of the transaction which, if true, shows it to have been in good faith for the purpose of making payment of an actual indebtedness of the son to the father, without any fraudulent intent on the part of the father, or any knowledge on his part of facts giving him any notice of any wrongful intent on the part of the son; and upon a careful examination of the entire evidence we are satisfied it is sufficient to sustain a finding that the transaction was in good faith.

Under the law in this state, unaffected by proceedings in bankruptcy or under assignment laws, an insolvent debtor may prefer any creditor and any creditor may accept such preferment, and, so long as a transaction is merely a preference given to one creditor over another, it is not fraudulent, notwithstanding such preference may render it impossible for the debtor thereafter to pay other creditors.

The relationship of the parties does not preclude such preference but only affects the question of the good faith thereof as a matter of evidence, changing the burden of proof and raising certain presumptions; but taking all of these effects into proper account in this case, we think the evidence is sufficient to sustain the findings, and that the judgment of the district court must be affirmed.

We recommend that the judgment of the district court be affirmed.

BARNES, C., concurs.

ALBERT, C., concurs in the result.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the lower court is

AFFIRMED.